IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>IONUT MADALIN ZAMFIR, DUDU MUSI, DANIEL ANDRONACHE, and RAZVAN TRASCA,<br><br>　　　　　　　Defendants. | 8:24-CR-87<br><br>MEMORANDUM AND ORDER ON TOTAL LOSS CALCULATION OBJECTIONS |

## I.　　INTRODUCTION

This case involves four[1] codefendants who participated in a scheme that involved purchasing used cars, rolling back the odometers, and then reselling the fraudulent vehicles for profit. The Court has accepted the four codefendants' pleas of guilty, and sentencing hearings are forthcoming. Presently before the Court are defendant Ionut Madalin Zamfir's, defendant Dudu Musi's, and defendant Razvan Trasca's Objections to the United States Probation Officer's determination that an eight-point offense level increase under USSG § 2B1.1(b)(1)(E) is warranted because the amount of loss attributable to each defendant exceeds $95,000. Filing 207 (Zamfir Objection); Filing 209 (Trasca Objection); Filing 211 (Musi Objection).[2] The defendants contend that the loss amount exceeds $40,000 but not $95,000, warranting a six-point rather than an eight-point offense level increase. For the reasons stated below, the defendants' Objections are overruled.

---

[1] A fifth defendant, Ionut Andronache, has been indicted in the above-captioned case but has not yet made any appearance in this case.

[2] The Court notes that, unlike his codefendants, defendant Daniel Andronache failed to object to the eight-level offense level increase under USSG § 2B1.1(b)(1)(E). Any forthcoming objections by defendant Andronache are untimely and therefore overruled on that basis. Moreover, any objection by defendant Andronache is overruled on the merits for the reasons stated in this Order.

1

On January 27, 2025, the Court held an evidentiary hearing on the issue of total loss and heard testimony from the case agent, Homeland Securities Investigations Special Agent Krystle Mendoza, and a Nebraska Department of Motor Vehicles Fraud Unit investigator, Deputy Sheriff Joseph Kubicek. Filing 183 (Text Minute Entry). Special Agent Mendoza's testimony on direct- and cross-examination established that the defendants conspired to defraud vehicle buyers by rolling back the odometers on no fewer than 23 vehicles. Deputy Kubicek testified about the methods that law enforcement uses to determine the amount of loss associated with vehicle fraud. The Court observed the conduct and demeanor of these witnesses at the evidentiary hearing and found them to be credible.

Testimony and documentary evidence at the evidentiary hearing demonstrated that the defendants would often use Facebook accounts with false names to purchase and resell vehicles after rolling back the odometers. Often, multiple defendants would be involved with the purchasing or reselling of any given vehicle. The Government used several methods of determining loss, including discussion with the fraud victims and public records. Special Agent Mendoza conceded that law enforcement could not ascertain the precise purchase and sale prices of every fraudulent vehicle through these methods, so for at least two vehicles, Carfax fair market price estimates were used to estimate loss. The Government ultimately calculated the total loss attributable to each defendant to be $104,400, and the Probation Officer arrived at the same sum.

## II.    ANALYSIS

The Court concludes that each defendant in this case is responsible for over $95,000 in total loss, warranting an eight-point offense level enhancement. This conclusion is supported by two findings: first, all defendants are responsible for the loss caused by each vehicle; and second,

the methods used by the Government to calculate total loss are sufficient to produce the reasonable estimate of loss required by the law.

### A.     Objection Standards

Federal Rule of Criminal Procedure 32(i)(3) requires the Court to rule on disputed portions of the presentence investigation report that affect sentencing. "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Sentencing determinations "generally rest on the preponderance-of-the-evidence standard," *Robbertse v. Garland*, 79 F.4th 944, 948 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 2630, 219 L. Ed. 2d 1268 (2024), and must be "[ ]supported by substantial evidence." *United States v. Atterberry*, 775 F.3d 1085, 1090 (8th Cir. 2015). "[T]he government has the burden of proof [on] the base offense level and any enhancing factors." *United States v. Poor Bear*, 359 F.3d 1038, 1041 (8th Cir. 2004).

### B.     Scope of the Loss Attributable to Each Defendant

The defendants object to being held responsible for the entire loss, specifically regarding vehicles purchased and resold by codefendants, caused by the vehicle fraud conspiracy. The Court notes at the outset that the defendants' plea agreements explicitly include as relevant conduct "vehicle acquisitions and sales conducted in the same manner by co-defendants." Filing 140 at 5; Filing 163 at 5; Filing 170 at 4; Filing 180 at 5. This language in the plea agreement alone suffices

to establish that the defendants are responsible for loss amounts occasioned by their codefendants' vehicle fraud. *See, e.g.*, United States v. Allen, 641 F. App'x 675 (8th Cir. 2016) (relying on stipulations in plea agreement).

Even setting aside the stipulation in each defendant's plea agreement, the evidence—including documents and testimony presented at the evidentiary hearing and the undisputed portions of the Presentence Investigation Reports—demonstrates the existence of a conspiracy amongst the codefendants. The Eighth Circuit has stated,

> In the case of a jointly undertaken criminal activity, relevant conduct includes all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity and that occurred during the commission of the offense of conviction. A co-conspirator's actions can count as relevant conduct, even if the defendant wasn't present when the crime occurred. The focus of our analysis is on the scope of the defendant's participation, not on the scope of the conspiracy as a whole. It is the Government's burden to prove the loss amount by a preponderance of the evidence.

United States v. Miller, 41 F.4th 1019, 1024 (8th Cir. 2022) (internal citations and quotations omitted).

Each defendant acted within the scope of the conspiracy and sought to further the criminal enterprise. As the Government states, "All the charged Defendants currently in custody conducted overlapping transactions concerning certain subject vehicles, for example acquiring a vehicle that a codefendant later sold or accompanying a co-defendant during an acquisition or sale." Filing 198 at 3. This assertion is consistent with the testimony and documentary evidence produced at the evidentiary hearing. For example, investigators uncovered messages sent between the codefendants discussing their fraudulent operation. Acts by codefendants relating to the vehicle fraud were not only "reasonably foreseeable" to each defendant; such acts were deliberately coordinated to earn revenue and further the conspiracy.

In addition, the fact that a defendant may have been incarcerated during some of his codefendants' fraudulent activity, *see* Filing 207 at 4–5, does not preclude attributing losses caused by the fraud to the incarcerated defendant. The Eighth Circuit has stated, "If a conspiracy is effected while the defendant is incarcerated and he has not withdrawn from the conspiracy, his responsibility is curtailed only if those acts were not reasonably foreseeable at the time of his incarceration." *United States v. Maxwell*, 778 F.3d 719, 735 (8th Cir. 2015). Because further vehicle fraud was reasonably foreseeable to the defendant at the time he was incarcerated, and because there is no indication any defendant ever withdrew from the conspiracy, it is appropriate to hold each defendant accountable for the loss caused by codefendants.

Finally, the Eighth Circuit has held that where there is "a close relationship between" coconspirators, and the coconspirators have demonstrated a "substantial level of commitment to the conspiracy," other conspirators' actions in furtherance of the conspiracy are "reasonably foreseeable." *United States v. Lyons*, 556 F.3d 703, 707 (8th Cir. 2009) (quoting *United States v. Pizano*, 421 F.3d 707, 734 (8th Cir.2005)). As noted by one defendant, the codefendants in this case are family members. Filing 207 at 4. Not only are the defendants related, they also entered this country together, apparently without any authorization. Filing 207 at 4. Under these circumstances, actions by codefendants related to the vehicle fraud was "reasonably foreseeable," and the Government has proved by a preponderance of the evidence that the total loss amount is attributable to each defendant. *Miller*, 41 F.4th at 1024.

### C. Calculating Total Loss

The defendants object to the Government's methods of estimating acquisition and resale prices as insufficient to justify an eight-point offense-level enhancement.[3] For each vehicle, the Government used one or more of three main methods to provide a reasonable estimate of vehicle prices. First, the Government sometimes relied on "a statement by a participant in the transaction." Filing 196 at 5 ("As to Vehicle 1, for example, the original seller told an investigator he had sold it for $2,000."). Second, the Government sometimes relied on public records, such as bills of sale. Filing 196 at 6 ("For example, the ultimate purchaser of Vehicle 23 told investigators she purchased it for $8,500, but the bill of sale she received from the seller reflected a price of only $5,000. As to Vehicle 23, the ultimate purchaser explained that the seller put a lower price on the bill of sale 'for the taxes.'" (citations to evidentiary hearing transcript omitted)). Third, for at least two vehicles, where the Government could obtain neither a participant's statement nor a public record, the Government relied on Carfax fair market value estimates to determine a vehicle's value for calculating loss. Filing 196 at 6–7. The estimated amount of loss for each vehicle due to odometer fraud would then be calculated by subtracting the acquisition price from the resale price. Filing 96 at 5.

---

[3] Defendant Zamfir avers that a statement in the plea agreement ("The loss as to each vehicle is the difference between the price for which Defendant or a confederate acquired a vehicle and the price for which it was sold after its odometer was altered (rolled back).") requires limiting "the loss amount to actual loss as opposed to the inclusion of intended loss amounts." Filing 207 at 2. The Court disagrees for two reasons. First, the defendant's plea agreements specify that "all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 1l(c)(l)(B)." *See* Filing 163 at 5. That Rule specifically provides that any agreement regarding "a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor . . . does not bind the court." Fed. R. Crim P. 11(c)(1)(B); *see also United States v. Nickerson*, 322 F. App'x 472, 473 (8th Cir. 2009) (stating that the Rule "allows the government to agree to recommendations that are not binding on the district court concerning particular sentencing ranges or application of sentencing enhancements"). Second, "the guidelines count the larger amount" of actual or intended loss. *United States v. Kidd*, 963 F.3d 742, 753 (8th Cir. 2020) (citing USSG § 2B1.1, cmt. n.3). Excluding intended loss amounts would fail to properly reflect the extent of the offense conduct in this case.

The Court concludes that the Government's methods of calculating total loss—using victim interviews, public records, and at times Carfax fair market value estimates—are sufficient for sentencing purposes. "Because the damage wrought by fraud is sometimes difficult to calculate[,] a district court is charged only with reasonably estimating the loss using a preponderance of evidence standard." *United States v. Engelmann*, 720 F.3d 1005, 1013 (8th Cir. 2013) (alteration in original and citation omitted). Comment 3(B) to USSG § 2b1.1 states, "The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." That Comment further provides the following non-exhaustive list of factors to consider:

> (i) The fair market value of the property unlawfully taken, copied, or destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property.
> (ii) In the case of proprietary information (e.g., trade secrets), the cost of developing that information or the reduction in the value of that information that resulted from the offense.
> (iii) The cost of repairs to damaged property.
> (iv) The approximate number of victims multiplied by the average loss to each victim.
> (v) The reduction that resulted from the offense in the value of equity securities or other corporate assets.
> (vi) More general factors, such as the scope and duration of the offense and revenues generated by similar operations.

USSG § 2B1.1, cmt. n.3.

The defendants argue that the estimates are unreliable because most deals were done by cash transaction, and "[t]he only evidence supporting the sale price from those transactions was from the buyers, who knowingly and willingly committed tax fraud in documenting a lower price

for the resold vehicles on the open bill of sale."[4] Filing 211 at 3. The Court disagrees. "At sentencing, the district court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, including hearsay and double hearsay evidence, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 44 F.4th 819, 822 (8th Cir. 2022) (quoting USSG § 6A1.3(a)). This applies to "a law enforcement officer's hearsay testimony as to how a crime victim [ ] described the defendant's conduct." *Id.* Here, as noted by the defendants, many of the victims inculpated themselves with these statements to law enforcement admitting tax fraud. Inculpatory statements carry a degree of trustworthiness, which is why certain statements against interest are exceptions to the rule against hearsay. Fed. R. Evid. 804(b)(3) (excepting statements that tend to "expose the declarant to civil or criminal liability") *see also United States v. One Star*, 979 F.2d 1319, 1322 (8th Cir. 1992); *United States v. Fox*, 889 F.2d 357, 360 (1st Cir. 1989) ("Defendant told the bank officials that she obtained five fraudulent loans. We think this was akin to an admission against interest."). The fact that statements "qualif[y] for at least one exception from the hearsay rule renders them more reliable." *United States v. Shackelford*, 462 F.3d 794, 796 (8th Cir. 2006). Even if the statements from the victims here as to how much they actually paid do not technically qualify as statements against interest under the hearsay rules, the Court believes the victim's statements regarding what they actually paid for the vehicle are reliable. This is so even if the defendants and victims disclosed a lower price on the bill of sale. The Court therefore concludes that basing reasonable loss estimates upon victim statements and public records are reasonable.

---

[4] The defendants' contention is essentially that the buyers at times knowingly disclosed on the bill of sale a price that was lower than the actual price paid for the automobile. Buyers have an incentive to list on the bill of sale a lower price for the vehicle than that which they actually paid because a lower price on the bill of sale lowers the sales tax bill for the buyer at the Department of Motor Vehicles when the buyer registers the vehicle.

The defendants also object to the use of Carfax to estimate loss as to vehicles for which law enforcement was otherwise unable to learn the price. *See* Filing 207 at 5. The Court disagrees. At the evidentiary hearing and in an affidavit, Deputy Kubicek testified to his training and experience as it relates to vehicle fraud. Deputy Kubicek states in his affidavit, "Carfax is a service generally relied upon by persons who buy and sell vehicles, such as motor vehicle dealers, auction operators, and private buyers and sellers." Filing 198-1 at 2 (¶ 4). He further lists "[t]he factors Carfax considers when estimating vehicle sale value," including:

> a. the year, make, model and trim (trim being the different versions or packages of a vehicle model, each offering a unique combination of features and options, ranging from basic to luxury);
> b. the vehicle's standard and optional features;
> c. the vehicle's condition;
> d. the number of owners;
> e. the accident history;
> f. the service history
> g. registration history;
> h. open manufacturer recalls;
> i. the vehicle's use — rental, fleet or personal;
> j. whether the purchaser is a car dealer or a private party; and
> k. geographic location of the sale.

Filing 198-1 at 2–3 (¶5). Finally, Deputy Kubicek gave his opinion that Carfax "generates reasonably reliable estimates of used vehicle sale values. The estimate will be a range, with the midpoint being the most reliable estimate of the vehicle's sale value." Filing 198-1 at 3 (¶ 7). The Court agrees with the Government that it is reasonable to use Carfax to generate reasonable loss estimates where the actual vehicle prices are otherwise unobtainable. The defendants do not suggest any alternative methods that would better estimate total loss. Under these circumstances, the Court concludes by a preponderance of the evidence that the Carfax vehicle prices used to measure loss serve to "reasonably estimat[e] the loss." *Engelmann*, 720 F.3d at 1013.

### III. CONCLUSION

Therefore, the Court agrees that the United States Probation Officer properly determined that an eight-point offense level increase under USSG § 2B1.1(b)(1)(E) is warranted because the amount of loss attributable to each defendant exceeds $95,000 (for a total of $104,400).[5] Each defendant is accountable for the entire sum of the loss for sentencing purposes, and the total loss estimates are reasonable. The defendants' objections to the various Presentence Investigation Reports are all overruled. Accordingly,

IT IS ORDERED:

1. Defendant Zamfir's Objection, Filing 207, is overruled;

2. Defendant Trasca's Objection, Filing 209, is overruled; and

3. Defendant Musi's Objection, Filing 211, is overruled.

Dated this 28th day of April, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

---

[5] The Court acknowledges that the restitution amounts listed in each defendant's Presentence Investigation Report differ from the loss amounts attributable under USSG § 2b1.1(b)(1)(E). No party has disputed these restitution amounts. The law does not require the restitution amounts to match the total loss amount calculated pursuant to the special requirements of USSG § 2b1.1(b)(1)(E).